Argued December 2, 1919, reversed and remanded February 3, 1920.

## LEVINE *v.* LEVINE.*

(187 Pac. 609.)

**Judgment—Full Faith and Credit Clause Applies Only to Final Adjudication in One State Sued on in Another.**

1. Article IV, Section 1, of U. S. Constitution, requires that full faith and credit shall be given in each state to the judicial proceedings of every other state; but in order to maintain an action on a money judgment recovered in another state the judgment must be a final adjudication in full force in the state where rendered, capable of being there enforced by final process.

---

*Authorities passing on the question of action to recover installments of alimony accruing under a decree rendered in another state are collated in notes in 59 L. R. A. 178; 9 L. R. A. (N. S.) 1168; 28 L. R. A. (N. S.) 1068.                                        REPORTER.

**Divorce—Final Judgment for Alimony in One State Entitles Plaintiff to Sue for Enforcement of "Debt" Therefor in Other State.**

2.   Where a suit terminates in a divorce decree, providing for the custody and maintenance of a minor child and for alimony to the wife, that part of the decree relating to divorce is protected by Article IV, Section 1, of U. S. Constitution, relating to full faith and credit, as are also the provisions as to maintenance and alimony, if they are finalities, an alimony decree being generally considered a "debt" of record as much as any other judgment for money; and in another state, where the distinction between actions at law and suits in equity are preserved, plaintiff may resort to an action at law to enforce the debt created by the decree.          .

[As to enforcement of decree for alimony by action at law, see notes in 3 Ann. Cas. 579; 8 Ann. Cas. 700; 10 Ann. Cas. 547; 20 Ann. Cas. 1068.]

**Divorce—Plaintiff, to Whom Alimony Payable, Proper Party to Sue Therefor in Another State.**

3.   Where a divorce decree of one state required defendant to pay installments for alimony for maintenance "to the plaintiff," she is the proper party to bring action in another state to recover for unpaid installments.

**Divorce—Courts of One State not Required to Enforce Alimony or Maintenance Decree of Other, if Subject to Modification by Rendering Court.**

4.   If a part of a divorce decree of another state relating to alimony or maintenance is not final, but is subject to modification by the court rendering it, then neither Article IV, Section 1, of U. S. Constitution, relating to full faith and credit, nor comity, compels the courts of another state to enforce that part of the decree, since no other than the court rendering the decree could undertake to administer relief without bringing about conflict of authority.

**Divorce—Where Court has Power to Modify Accrued Installment of Alimony or Maintenance, Decree is not Final, Within Full Faith and Credit Clause.**

5.   Whether an accrued installment of alimony is to be treated as a final judgment, entitled to protection of Article IV, Section 1, of U. S. Constitution, relating to full faith and credit, must be determined by the law of the state in which the decree is entered, and if the law of such state gives discretionary power to modify an accrued installment, then such installment does not come within such constitutional provision.          .

**Divorce—Decree for Maintenance and Alimony Subject to Modification as to Accrued Installments not Entitled to Full Faith and Credit in Other State.**

6.   In view of Gen. Stats. Minn. 1913, Sections 7123, 7129, having been construed by the Minnesota Supreme Court as giving the decreeing court discretionary power to modify the divorce decree as to alimony and maintenance and revoke or change the amount of matured installments, because of change of conditions since original adjudication, which is not *res judicata* as to subsequent conditions, the decree is not final as to maintenance and alimony, and not within

the protection of Article IV, Section 1, of U. S. Constitution, relating to full faith and credit as to such matured installments.

**Divorce—Requirement That Plaintiff Allege and Prove Alimony in Maintenance Decree a Finality to Recover Thereon in Another State.**

7. Plaintiff, bringing law action to collect past-due installments on divorce decree for alimony and maintenance, is not entitled to the full faith and credit of the decree, under Article IV, Section 1, of U. S. Constitution, unless she alleges and proves the decree's finality as to alimony and maintenance installments past due; but such installments are entitled to full faith and credit where, after they have become due, they are decreed or adjudged by the original court to be presently payable.

**Divorce—Decree for First Installment of Alimony Held Sufficiently Final in Sister State to Entitle to Judgment.**

8. A decree for present payment of a fixed sum as alimony or maintenance, even though not absolutely final under the law of the state where rendered, is nevertheless, when unpaid, at least *prima facie* final in a sister state, and, in the absence of evidence to the contrary, is sufficient to support a judgment in the sister state, so that plaintiff is entitled to a judgment for the first installment of alimony, due at time of rendition of original decree.

**Divorce—Alimony Decree for Money Presently Due Treated in Sister State as Final Decree Until Modified.**

9. In an action for judgment for past installments of alimony and maintenance, if the original decree had been modified as to amounts due at date of original decree, such modification would be enforced, or, if defendant asked time of the state in which enforcement is sought, he would be allowed to proceed in the court of original instance to modify the decree; but, until the decree is modified in the state of its origin, it is to be treated as a final judgment.

**Divorce—Alimony and Maintenance Installments not Enforceable in Sister State Until Adjudicated into Fixed Sum Payable Presently.**

10. In an action for past-due installments of alimony and maintenance upon a decree in a sister state, from an averment that on a certain date "and for more than two years prior thereto plaintiff and defendant were husband and wife," and the subsequent averment that the suit terminated in a divorce decree, awarding alimony in installments, "the first payment to be October 20, 1913," the inference may be drawn that the first installment was payable on the date of rendition of the decree and may be enforced; but subsequent installments may not be enforced until adjudication in state of original decree transforms them into a fixed sum payable presently.

**Costs—May be Refused on Reversal in Law Action.**

11. In an action at law, though the appeal has resulted in reversal of judgment for plaintiff, the defendant need not be allowed a judgment for costs and disbursements.

From Multnomah: Robert G. Morrow, Judge.

Department 1.

The plaintiff Hildegarde Levine obtained a decree on October 20, 1913, in Hennepin County, Minnesota, divorcing her from her then husband, David Levine. The decree also provided that the plaintiff should have the care and custody of a minor child of the parties. The decree required the father to pay to the mother, for the care and maintenance of the child, the sum of $25 per month payable as follows: $12.50 on the fifth day and $12.50 on the twentieth day of the month "the first payment to be October 20, 1913." The father did not pay any of the installments; and consequently in 1918 the plaintiff began this action in a Circuit Court of this state to recover from the defendant the sum of $1,300, the amount of the accrued installments. The complaint refers to certain statutes in force in Minnesota and affirmatively avers that the law reserves to the courts of that state power to modify divorce decrees so far as they relate to the care, custody and maintenance of the children of divorced parents. It is alleged that "no part of said decree has ever been changed, modified or vacated, but now remains in full force and effect." The trial court overruled a demurrer to the amended complaint, and, upon the refusal of the defendant to plead further, the plaintiff was awarded a judgment for $1,300, together with costs and disbursements. The defendant appealed.

REVERSED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. L. E. Schmidt.*

For respondent there was a brief and an oral argument by *Mr. Bartlett Cole.*

HARRIS, J.—1. Article IV, Section 1, of the Federal Constitution, commonly known as the full faith and credit clause, requires that:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

Congress exercised the power conferred upon it and by statute prescribed the mode of attesting the records of one state so as to entitle them to be proved in the courts of another state and enacted that records so authenticated should have such faith and credit in every court within the United States as they have by law or usage in the state from which they are taken: 15 R. C. L. 922. This constitutional provision does not confer upon Congress power to give such judgment all the legal properties, rights and attributes to which it is entitled by the laws of the state where rendered. To give it the force of a judgment in another state it must be made a judgment there and can only be executed in the latter as its laws permit: 15 R. C. L. 926; 23 Cyc. 1546. While the judgment of one state is entitled to receive the same faith, credit and respect that is given to it in the state where rendered, it is not entitled to any greater effect or finality than would be accorded to it in the state where rendered; and, therefore, if the judgment is conclusive in the home state it is equally conclusive in the sister state; but if it is inconclusive in the home state, it is likewise inconclusive in the sister state: 15 R. C. L. 928. Expressed in general terms the rule is that in order to maintain an action in one state upon a money judgment recovered in another state, such judgment must be a final adjudication in full force

in the state where rendered and capable of being enforced by final process; and ordinarily it should create a definite and absolute indebtedness against the judgment debtor: 23 Cyc. 1559.

2. When a suit for divorce terminates in a decree which divorces the husband and wife, provides for the care, custody and maintenance of the minor children and allows alimony to the wife, that part of the decree which relates to the divorce is protected by the full faith and credit clause; and so, too, are the provisions concerning maintenance and alimony if they are finalities. An allowance in a divorce decree for the maintenance of children is usually referred to as "maintenance," and an allowance for the divorced wife is generally designated by the term "alimony"; but for the sake of brevity we shall use the term "alimony" as applicable alike to allowances for the maintenance of children and to allowances for the support of the divorced wife. A decree for alimony is generally considered a debt of record as much as any other judgment for money: *Barber* v. *Barber,* 21 How. 582 (16 L. Ed. 226, see, also, Rose's U. S. Notes); *White* v. *White,* 233 Mass. 39 (123 N. E. 389); *Phillips* v. *Kepler,* 47 App. D. C. 384.

If that part of the Minnesota decree which relates to a money award is shielded by the full faith and credit clause, then in this jurisdiction, where the distinction between actions at law and suits in equity are preserved, the plaintiff may resort to an action at law for the enforcement of the debt created by the Minnesota decree: *De Vall* v. *De Vall,* 57 Or. 128, 145 (109 Pac. 755, 110 Pac. 705).

3. The Minnesota decree requires the defendant to pay the installments "to the plaintiff"; and, hence, she

is the proper party plaintiff: *Phillips* v. *Kepler,* 47 App. D. C. 384, 388.

4, 5. Precedents involving attempts to enforce in one state decrees for alimony rendered in another state may be divided into three classes: (1) Those dealing with awards payable presently; and this class includes not only those cases where a gross sum is made payable contemporaneously with the rendition of the divorce decree, but also those where installments have accrued on a decree providing for the future payment of alimony in installments and upon the petition of either party there is a finding that the arrears amount to a specified sum and an adjudication that such specified sum is payable presently; (2) those treating of accrued installments which have not been merged into a re-adjudication; and (3) those relating to installments which have not yet become due. Adjudications belonging to the third class may be ignored, since all agree that a decree rendered in one state cannot be enforced in a sister state, as to installments not yet due, for two reasons: (a) No money is yet due; (b) it is generally, if not universally, understood that an allowance is subject to modification before accrual. The Minnesota decree ordered the defendant to pay $12.50, the first installment, on October 20, 1913, the day of the rendition of the decree, while the remainder was made payable in the future. The complaint alleges that the defendant did not pay "any part of the money awarded to the plaintiff" by the decree; and hence the precedents belonging to the first of the three classes of cases mentioned apply to a small portion, $12.50, of the moneys sought to be recovered, while the adjudications falling in the second class of cases are applicable to the remainder of the moneys involved in this con-

troversy.  We shall first consider the accrued install-
ments.

As already stated the Minnesota decree, to the extent
that it is final and not subject to modification, is en-
titled to the protection of the full faith and credit clause
of the Federal Constitution and must be enforced
in this state.  If, however, a part of the Minnesota de-
cree is not final but is subject to modification by the
court which rendered it, then neither the United States
Constitution nor the principle of comity compels the
courts of this state to enforce that part of the decree,
for no court other than the one granting the original
decree could undertake to administer relief without
bringing about a conflict of authority: 1 R. C. L. 958.
Language used in *Lynde* v. *Lynde,* 181 U. S. 183 (45
L. Ed. 810, 21 Sup. Ct. Rep. 555, see, also, Rose's U. S.
Notes), is responsible for a few adjudications which
apparently proceed on the mistaken theory that a final
judgment can include only moneys payable presently;
as, where the decree allows a gross sum payable at
once upon the rendition of the decree, or where, as was
done in *De Vall* v. *De Vall,* 57 Or. 128, 132 (109 Pac.
755, 110 Pac. 705), the court which granted the origi-
nal decree, allowing alimony payable in installments,
at some subsequent time, acting upon the petition of
either party, finds that specified installments have ac-
crued since the rendition of the original decree and
adjudges that, on account of such arrears, a definite
sum is payable presently.  In other words, there seems
to have been an impression, more or less general, that
the fact of an original decree allowing alimony payable
in the future in installments plus the fact of an accrued
installment did not produce such a judgment as was
protected by the Federal Constitution; but that before
the full faith and credit clause could operate there

must have been an adjudication after the accrual of the installment.

In a subsequent decision, however, the whole subject was clarified and made certain. In *Sistare* v. *Sistare*, 218 U. S. 1 (54 L. Ed. 905, 30 Sup. Ct. Rep. 682, 20 Ann. Cas. 1061, 28 L. R. A. (N. S.) 1068, see, also, Rose's U. S. Notes), it was held that generally speaking the right to an installment payable in the future becomes vested contemporaneously with the maturity of the installment, provided the decree allowing alimony has not been modified prior to the accrual of the installment, and that therefore such an accrued installment is protected by the full faith and credit clause; but this comprehensive statement made in general terms is subject to an exception, for if under the law of the state where the decree is granted there is reserved to the court which passed the decree discretionary power to modify the original decree so as to affect not only installments yet to become due but also the amount of any installment which has become due and is unpaid, then such accrued installment does not constitute a final judgment, and on that account is not protected by the full faith and credit clause of the Constitution. In other words, the fact that alimony is payable in installments is not necessarily a controlling factor; but the question as to whether an accrued installment of alimony is to be treated as a final judgment entitled to the protection of the full faith and credit clause must be determined by the law of the state in which the decree is entered; and hence if by the law of the state in which the original decree is entered the court is given discretionary power to modify an accrued installment, then that installment does not come within the embrace of the full faith and credit clause of the Federal Constitution: *Rowe* v. *Rowe*, 76

Or. 491, 495 (149 Pac. 533); *McGregor* v. *McGregor*, 52 Colo. 292 (122 Pac. 390, 391); *Bolton* v. *Bolton*, 86 N. J. Law, 622, 625 (92 Atl. 389, Ann. Cas. 1916E, 938); *Campbell* v. *Campbell*, 28 Okl. 838 (115 Pac. 1111); *Ogg* v. *Ogg* (Tex. Civ. App.), 165 S. W. 912, 914; *Cotter* v. *Cotter*, 225 Fed. 471 (139 C. C. A. 453); *Tiedemann* v. *Tiedemann*, 158 N. Y. Supp. 851, 854 (172 App. Div. 819); *Gaffey* v. *Criteser* (Tex. Civ. App.), 195 S. W. 1166; *Phillips* v. *Kepler*, 47 App. D. C. 384, 386; *Mc-Cullough* v. *McCullough*, 203 Mich. 288 (168 N. W. 929, 931); *Collard* v. *Collard*, 7 Ohio App. 53; *White* v. *White*, 233 Mass. 39 (123 N. E. 389, 390); *Taylor* v. *Stowe*, 218 Mass. 248, 249 (105 N. E. 890).

6. In many and probably most of the states statutes have been enacted reserving to the courts power to modify decrees allowing alimony. Upon examination it will be found that in most instances, when conferring the power of modification, these statutes employ general terms, without limiting the power to future installments; as, for example, the New York statute, discussed in *Sistare* v. *Sistare,* which provides:

"The court may, by order upon the application of either party to the action, after due notice to the other, to be given in such manner as the court shall prescribe, at any time after final judgment, annul, vary or modify such directions."

In most of the jurisdictions where the question was for the first time presented after and not before the decision of the supreme court of the United States in *Sistare* v. *Sistare,* 218 U. S. 1 (54 L. Ed. 905, 30 Sup. Ct. Rep. 682, 20 Ann. Cas. 1061, 1067, 28 L. R. A. (N. S.) 1068, see, also, Rose's U. S. Notes), the courts, when interpreting statutes like that of the New York enactment have followed the rule of construction applied in *Sistare* v. *Sistare* and held that where the statute

granting the power to revoke or modify does not expressly confer authority to annul or change an accrued installment, "every reasonable implication must be resorted to against the existence of such power" to revoke or modify an accrued installment. In other words, in the absence of clear language manifesting an intention to confer the power to revoke or modify the amount of an accrued installment, a statute which in general terms confers the power of modification will, under the more modern authorities, be construed to mean that the power, when exercised, can operate prospectively only and that it cannot operate retrospectively: *Campbell* v. *Campbell,* 28 Okl. 838 (115 Pac. 1111, 1113); *McGregor* v. *McGregor,* 52 Colo. 292 (122 Pac. 390, 391); *Bolton* v. *Bolton,* 86 N. J. Law, 622, 630 (92 Atl. 389, Ann. Cas. 1916E, 938); *Phillips* v. *Kepler,* 47 App. D. C. 384. Where, however, the statute of any state conferring the power of modification has been construed by the highest court of that state, the construction which such court has placed upon the statute is conclusive upon the courts of sister states when dealing with decrees like the one here involved.

The plaintiff pleaded certain sections of the Minnesota statute and by so doing brought herself within the rule adhered to in *Scott* v. *Ford,* 52 Or. 288, 294 (97 Pac. 99), and approved in *De Vall* v. *De Vall,* 57 Or. 128, 138 (109 Pac. 755, 110 Pac. 705). We now turn to the statutes of Minnesota, and, after noticing them, we shall then seek to ascertain what construction that state's highest court has placed upon its legislation.

It is expressly provided by statute in the state of Minnesota that the court, which has passed a decree divorcing the husband and wife and providing for the care, custody and maintenance of their minor children, may at a subsequent date modify the original decree

and, from time to time, on the petition of either parent revise and alter the decree so far as it concerns the care, custody and maintenance of the children and make such new order as the circumstances of the parents and the benefit of the children shall require: Section 7123, Gen. Stats. of Minn. (1913). It is also provided by statute that after rendering the decree of divorce and for alimony ''or other allowance for the wife and children, or either of them,'' the court may, from time to time, on petition of either of the parties, revise and alter the decree ''respecting the amount of such alimony or allowance, and the payment thereof, * * and may make any order respecting any of the said matters which it might have made in the original action'': Section 7129, Gen. Stats. of Minn. (1913). It will be observed that the language conferring power to modify an allowance for maintenance is in substance and effect the same as the language which grants authority to modify a decree for alimony; and therefore if Section 7129 of the Gen. Stats. of Minn. permits a modification of the decree for alimony to operate retrospectively so as to revoke or change the amounts of matured installments, then the same construction must be placed upon Section 7123 which relates to maintenance.

In the early case of *Semrow* v. *Semrow,* 23 Minn. 214, 216, it was suggested:

''That it is by no means certain that the provisions (of the statute) as to alteration and revision of alimony apply to a case in which alimony is awarded, * * in a gross sum.''

But there are many subsequent precedents in Minnesota holding that the power of modification applies to awards ''in a gross sum.'' We quote from *Haskell* v. *Haskell,* 116 Minn. 10, 13 (132 N. W. 1129):

"Under the statute of this state the court awarding a judgment for alimony, whether such alimony be payable in a gross amount or in installments, has undoubted authority to revise or modify such judgment. This power may be exercised upon the application of either party for good cause shown. A substantial change from the situation that prompted or made proper the terms of the original decree justifies a change in those terms. An application for such change or modification is addressed largely to the discretion of the trial court."

In *Holmes* v. *Holmes,* 90 Minn. 466 (97 N. W. 147), the plaintiff Mina L. Holmes secured a decree on February 13, 1893, which divorced the parties and allowed her alimony in the gross sum of $600 payable in one year. More than ten years afterwards, on June 27, 1903, the alimony not having been paid, the defendant Frank D. Holmes filed a motion to modify the decree by having that part of it vacated which required the payment of alimony. In the course of the opinion the court refers to the fact that counsel had exhaustively discussed the question of the power to modify the judgment for alimony, "in this case, it being only in gross"; and in response to the argument of counsel the court said:

"It is the law of this state that the court awarding a judgment for alimony, whether it be for a gross amount or payable in installments, has the power to modify such judgment on the application of either party, for good cause shown. * * The power, however, is to be exercised only upon clear proof of new facts showing that the changed circumstances of the parties render proposed modification equitable. The question of such modification is one largely within the discretion of the trial court."

If we correctly interpret the opinions of the Supreme Court of Minnesota, especially the holding in *Holmes*

v. *Holmes,* it is the law in that state that the court
granting a decree for a divorce and alimony has the
power subsequently to modify the original decree even
as to accrued installments. However, the power of
modification is not arbitrary and unrestricted, for as a
rule the power to modify is exercisable "only when
conditions have changed from what they were at the
time the decree was entered, and the change is such as
to justify and require a modification"; and it is pos-
sible, too, that a decree for alimony may be annulled or
modified "upon facts occurring before the decree, of
which the party was excusably ignorant at the time of
its rendition": *Hoff* v. *Hoff,* 133 Minn. 86, 88 (157
N. W. 999); *Semrow* v. *Semrow,* 23 Minn. 214; *Weld* v.
*Weld,* 28 Minn. 33 (8 N. W. 900); *Smith* v. *Smith,* 77
Minn. 67 (79 N. W. 648); *Barbaras* v. *Barbaras,* 88
Minn. 105 (92 N. W. 522); *Bowlby* v. *Bowlby,* 91 Minn.
193 (97 N. W. 669); *Brandt* v. *Brandt,* 40 Or. 477, 485
(67 Pac. 508). When placing this restriction upon the
power of modification the Minnesota court merely fol-
lowed the general rule which prevails in other juris-
dictions; and, indeed, when announcing, in *Semrow* v.
*Semrow,* 23 Minn. 214, this limitation upon the power
to modify a judgment for alimony the court relied upon
the authority of *Perkins* v. *Perkins,* 12 Mich. 456;
*Blythe* v. *Blythe,* 25 Iowa, 266; *Fisher* v. *Fisher,* 32
Iowa, 20; *Wilde* v. *Wilde,* 36 Iowa, 319. This rule of
limitation is based on the theory that the original de-
cree is *res adjudicata* as to the then existing facts; or,
as aptly stated in *Blythe* v. *Blythe,* 25 Iowa, 266, 269:

"The original decree is conclusive upon the parties
as to their then circumstances; and the power to make
changes in the decree is not a power to grant a new
trial or retry the same case, but only to adapt the de-
cree to the new or changed circumstances of the par-
ties."

Further exemplification and discussion of the doctrine may be found in *Graves* v. *Graves*, 132 Iowa, 199 (109 N. W. 707, 10 Ann. Cas. 1104, 10 L. R. A. (N. S.) 216); *Cole* v. *Cole*, 142 Ill. 19 (31 N. E. 109, 34 Am. St. Rep. 56, 19 L. R. A. 819); *Perkins* v. *Perkins*, 12 Mich. 456; *Blythe* v. *Blythe*, 25 Iowa, 266; *Wilde* v. *Wilde*, 36 Iowa, 319; *Wagner* v. *Wagner*, 36 Minn. 239 (13 N. W. 766); *Merges* v. *Merges*, 94 Or. 246 (186 Pac. 36); *Averbuch* v. *Averbuch*, 80 Wash. 257 (141 Pac. 701, Ann. Cas. 1916B, 873); 1 R. C. L. 941. In brief, the power of modification can only be exercised when there has been a change in conditions since the original adjudication; for the original decree is *res adjudicata* as to facts and conditions existing at the time of its rendition. Since the power of modification is and always has been thus restricted in all jurisdictions, it is obvious that it was this restricted power of modification which the court had in mind when defining the exception to the general rule spoken of in *Sistare* v. *Sistare;* and it is manifest that it is there held that, if the court which grants a decree for alimony payable in the future in installments possesses this restricted power of modification, an accrued installment does not upon maturity become entitled to the protection of the full faith and credit clause. The Supreme Court of the United States does not say in *Sistare* v. *Sistare* that the power of modification must be arbitrary, unlimited or unrestricted in order to prevent the operation of the full faith and credit clause. If we have read and interpreted the decisions of the Supreme Court of Minnesota aright, the court which rendered the decree in the instant case has the power to modify it, if the conditions have changed since its rendition, to the extent of annulling or altering the amount of the installments which have matured since October 20, 1913, the date

of the decree; and therefore the full faith and credit clause does not protect any of those installments and they cannot in their present condition support a judgment in this state for their amount, since they have not been raised to the dignity of a final judgment: *Rowe* v. *Rowe,* 76 Or. 491 (149 Pac. 533) ; *Gilbert* v. *Gilbert,* 83 Ohio St. 265 (94 N. E. 421, 35 L. R. A. (N. S.) 521) ; *Bleuer* v. *Bleuer,* 27 Okl. 25 (110 Pac. 736) ; *Gaffey* v. *Criteser* (Tex. Civ. App.), 195 S. W. 1166; *Collard* v. *Collard,* 7 Ohio App. 53.

7, 8. The first installment is yet to be considered. It was made payable contemporaneously with the rendition of the decree on October 20, 1913; and, therefore, it is for a definite sum payable presently. Is the Minnesota decree, as to the first installment, conclusively final? If it is not conclusively a finality, is it to be treated exactly the same as an installment accruing after the rendition of the decree? If it is neither conclusively final nor to be treated exactly the same as an installment accruing after the rendition of the decree, then is the judgment to be regarded as *prima facie* final? To judgments for a fixed sum of alimony payable presently we may apply the language employed in *Sistare* v. *Sistare,* when the court there was referring to accrued installments, and say of such judgments for alimony payable presently that generally speaking they create an absolute and vested right to demand and receive immediately upon their rendition whatever amounts are named in them; but we must be mindful of the fact that this general rule is not without exceptions, for in some jurisdictions the power of modification may be exercised retrospectively upon an award which by the terms of the original decree allowing it, was made payable presently. An examination of reported decisions will reveal the fact that in many of

them it was either conceded by counsel or assumed by the court that a decree for a definite sum of alimony payable presently came within the protection of the Federal Constitution; as, for example, in *Cotter* v. *Cotter,* 225 Fed. 471, 474 (139 C. C. A. 453); *Williamson* v. *Williamson,* 155 N. Y. 423 (169 App. Div. 597); *Gaffey* v. *Criteser* (Tex. Civ. App.), 195 S. W. 1166, 1168; *McCullough* v. *McCullough,* 203 Mich. 288 (168 N. W. 929, 930); *Bleuer* v. *Bleuer,* 27 Okl. 25 (110 Pac. 736).   Courts have frequently said, when speaking in the abstract of judgments for the present payment of a fixed sum of alimony, that they are conclusive in a sister state; as, in *Audubon* v. *Shufeldt,* 181 U. S. 575 577 (45 L. Ed. 1009, 21 Sup. Ct. Rep. 735, 736, see, also, Rose's U. S. Notes), where we find the following language:

"The decree of a court of one state, indeed, for the present payment of a definite sum of money as alimony, is a record which is entitled to full faith and credit in another state, and may therefore be there enforced by suit."

Other cases of the same effect as the precedent last cited are *Cureton* v. *Cureton,* 132 Ga. 745, 751 (65 S. E. 65); *De Vall* v. *De Vall,* 57 Or. 128, 144 (109 Pac. 755, 110 Pac. 705).   See, also, 23 Cyc. 1559.   If a decree for the present payment of a fixed sum of alimony is, under the law of the state where rendered, in truth a final determination upon which the court cannot exercise the power of modification, even though conditions have changed since the date of the award, then the way is clear for the enforcement of the decree in a sister state: *Taylor* v. *Stowe,* 218 Mass. 248, 250 (105 N. E. 890); and, therefore, in jurisdictions where it is held on the one hand that decrees for fixed sums of alimony payable presently are finalities not liable to modifica-

tion, and on the other hand that installments accruing after the date of the decrees allowing them may be vacated and are not finalities but may be modified if conditions have changed, then such accrued installments may as a rule in those jurisdictions be transformed from mere expectancies into final judgments for fixed sums payable presently, by the filing of a petition showing accrual of the installments and their nonpayment and asking for an adjudication of the aggregate amount due, as was done in *De Vall* v. *De Vall,* 57 Or. 128, 144 (109 Pac. 755, 110 Pac. 705).

If, however, an award of alimony even though payable presently is not a finality, and if the court which granted it may nevertheless because of changed conditions vacate or alter the amount allowed, then quite a different situation is presented. If a decree for a fixed sum payable presently may, for exactly the same reasons which would be sufficient for the modification of installments accruing after the decree allowing them, be altered in the state where rendered, and if this decree in these circumstances must nevertheless be treated as a conclusive finality in a sister state, then the necessary result is that such decree is in the state of its origin liable to modification while in another state it is a finality, and hence is there given more faith and respect and greater credit than is accorded to it in the state which gave it existence. If, on the other hand, a sister state refuses to enforce a decree rendered in another state for a fixed sum of alimony payable presently merely because it is possible that conditions have changed upon which the court which rendered the decree may possibly in the exercise of its discretion change the decree, then the inevitable result is that such decree, although capable of enforcement in the state of its origin can never be enforced in the sister

state during the life of the debtor, and therefore such decree would in the sister state receive less faith and respect and be less credited than in the state which gave it life and existence.

If the possibility of modification must be entirely removed and if this fact must be affirmatively shown by the judgment creditor as a condition precedent before an unfaithful husband can in a sister state be compelled to pay alimony or an unnatural father forced to help to maintain his own children, then no decree for the present payment of alimony can ever be enforced in a sister state if the court in which the decree was rendered may, because of possible changes in conditions, in the exercise of its discretion see fit at some future but indefinite time to change the decree. In the very nature of things some period of time will always elapse between the rendition of the decree and the commencement of an action in the sister state where the fugitive husband or father may be found and this period of elapsed time will always afford a basis for the claim that this kind of a decree is not a finality, with the result that the sister state becomes an asylum for marital and parental slackers.

In some respects a decree for alimony payable presently is different from a decree which provides for the future payment of alimony in installments, even though both decrees are liable to modification. One is *res adjudicata* up to the very moment of maturity, while the other is not. One is made on the theory that the money ought to be paid immediately, while the other is not. The statutes of Minnesota afford means for compelling the payment of alimony, for besides other processes the court may make the decree a lien upon real estate or authorize its enforcement by execution against property, real or personal. A decree for ali-

mony payable presently which is capable of enforcement there ought to be made capable of enforcement here.

The plaintiff Hildegarde Levine cannot claim for her decree the protection of the full faith and credit clause unless she alleges and proves that it is a finality. The holding in *Rowe* v. *Rowe,* 76 Or. 491 (149 Pac. 533), is authority for ruling that the installments which have accrued since the rendition of the decree are not entitled to the protection of the Federal Constitution until transformed into a final judgment for a definite sum payable presently, as was done in *De Vall* v. *De Vall,* 57 Or. 128 (109 Pac. 755, 110 Pac. 705); and when the accrued installments are so transformed they will possess a quality of finality exactly the same as the first installment which became due on the very day when the decree was rendered.

A decree for the present payment of a fixed sum as alimony, even though not absolutely final under the law of the state where rendered, is nevertheless, when unpaid, at least *prima facie* final in a sister state and, in the absence of evidence to the contrary, is sufficient to support a judgment in the sister state: *Wells* v. *Wells,* 209 Mass. 282 (95 N. E. 845, 35 L. R. A. (N. S.) 561); Section 695, L. O. L. Applying this rule to the instant case we are brought to the conclusion that the plaintiff is entitled to a judgment for the first installment.

9. If the original decree has been modified the defendant may allege and prove the modification and obtain from it the benefit it gives him. If when sued in a sister state the defendant thinks he is entitled to a modification of the original decree, it is apprehended that if a proceeding is pending in a sister state for the enforcement of the decree rendered in another state

95 Or.—8

such pending proceeding will, upon a proper showing, be suspended and the defendant afforded a reasonable time within which to apply for a modification of the original decree; or, if a modification occurs at any time in the state where the decree originated the court in the sister state "by proper proceedings instituted therein, will give effect to such modification thereby carrying out the requirements of the federal constitution": *Trowbridge* v. *Spinning,* 23 Wash. 48 (62 Pac. 125, 130, 83 Am. St. Rep. 806, 54 L. R. A. 204). But until the decree is modified in the state of its origin it is to be treated as a final judgment: *Matson* v. *Matson* (Iowa), 173 N. W. 127, 133; *Paulin* v. *Paulin,* 195 Ill. App. 350, 352.

10. The complaint does not contain a positive and direct allegation that the Minnesota decree was rendered on October 20, 1913. There is, however, an averment that "on the twentieth day of October, 1913, and for more than two years prior thereto, the plaintiff and defendant were husband and wife," and there is also a subsequent averment that the Minnesota suit terminated in a decree divorcing the parties, granting the care and custody of the child to the plaintiff, and awarding alimony to the plaintiff to be paid to her in installments, "the first payment to be October 20, 1913"; and when those two separate averments are taken together the unavoidable and necessary inference to be drawn from the pleading is that the first installment was payable on the date of the rendition of the decree; and hence this opinion assumes that the first installment was made payable the very day when the divorce decree was rendered. But in order to make "assurance doubly sure," instead of entering a judgment here in favor of the plaintiff for the amount of the first installment as we could do under the terms

of Article VII, Section 3, of the present Constitution, the cause will be remanded to the court below for such further proceedings as may not be inconsistent with this opinion. If the first installment was in truth not made payable on the day when the Minnesota decree was rendered, the defendant should be afforded an opportunity to plead such fact. If, however, the first installment was in reality made payable contemporaneously with the rendition of the decree then the plaintiff is entitled to a judgment for the amount of the installment, unless, of course, it is made appropriately to appear that it has been paid or that by a subsequent modification of the decree the installment has been vacated or the amount of it changed. The plaintiff cannot recover any installments which have accrued after the date of the rendition of the decree until the Minnesota court which granted the original decree adjudicates the amount of the arrears and by such adjudication transforms the accrued installments into a fixed sum payable presently.

11. Although this is an action at law and the appeal has resulted in a reversal, nevertheless, for the same reason that was given in *Rowe* v. *Rowe,* 76 Or. 491, 497 (149 Pac. 533), and on the authority of *Stabler* v. *Melvin,* 89 Or. 226, 232 (173 Pac. 896), we do not allow the defendant a judgment for costs and disbursements; and therefore neither party shall have judgment for costs: *Olson* v. *Heisen,* 90 Or. 176, 181 (175 Pac. 859); *Miller Lumber Co.* v. *Davis,* 94 Or. 507 (185 Pac. 462).

The judgment is reversed and the cause is remanded for further proceedings.    REVERSED AND REMANDED.

McBRIDE, C. J., and BENSON, J., concur.

BURNETT, J. (Dissenting).—In my judgment it is erroneous to assume that the date of the divorce decree

in Minnesota was October 20, 1913, and upon that basis further to assume that the installment of maintenance payable on that day was one payable presently, so as to make the decree *prima facie* final *pro tanto*.

The complaint in the case before us does not expressly allege the date of the commencement of the suit for divorce or of the decree therein. In substance, its statement is that on October 20, 1913, the parties were husband and wife; that prior thereto the wife instituted the suit and that afterwards, without mention of the date, a decree was rendered requiring, among other things, that the first payment of alimony be made on the day mentioned. On demurrer, the pleading attacked is most strongly construed against the pleader. Nothing is taken by intendment. Seeing that the parties were husband and wife on that day, it is quite as permissible to assume that the date expressed for the first payment is void as undertaking to antedate the time of payment, as by a strained construction to impart finality to the pittance of $12.50, and withhold the same sanction from the arrearages of $1,300 charged against the defendant. Again, at the commencement of this action on April 30, 1918, fifty-four months and ten days had elapsed since October 20, 1913. The installments payable in that period under the Minnesota decree amount to $1,350. The plaintiff sues here for only $1,300. Hence we cannot say, as of a certainty, that she demands the first installment.

Passing this, however, we find in the complaint that in Minnesota, having made an order for maintenance of children involved in a divorce suit, the court may from time to time subsequently revise or alter the order. The statute there makes no distinction between an amount payable presently and one payable *in futuro*.

Both are equally subject to revision. The liability to pay each of them depends on the facts as they exist and are ascertained when the decree is renderd. Thus far both are to be classified as *res adjudicata.* They rest on the same foundation. If the amount of either is to be changed, as it can be under the Minnesota statute, it must be for some new condition arising since the rendition of the decree. For these reasons, based on the doctrine of *Rowe* v. *Rowe,* 76 Or. 491 (149 Pac. 523), as upon *stare decisis,* I am of the opinion that the plaintiff has not shown a final decree in Minnesota entitled to full faith and credit here, either as to the installment of $12.50 assumed by construction to be made payable presently, or as to those confessedly accruing afterwards, and hence has not stated a cause of action.

If the complaint is sufficient to allow the plaintiff to recover the trifle of $12.50, it does state a cause of action and is good as against the general demurrer. The defendant ought to be restricted to his objection as stated. If it is bad at all, it is untenable *in toto.* In that view, the judgment ought to go for the full amount, a result seemingly more consonant with right and justice. Because of the precedents, however, I am of the opinion that the plaintiff should be remitted to obtaining a final judgment in Minnesota conclusively entitling her to such arrearages as the court there shall award her, as illustrated in the De Vall case.

I dissent from the conclusion of Mr. Justice HARRIS.